## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

CURTIS L. HAMPTON,

                PLAINTIFF,         CASE NUMBER: 24-CV-10769

                                           HON. JONATHAN J.C. GREY

V.

HEIDI WASHINGTON, ET AL.,

                RESPONDENTS.

_____/

## OPINION AND ORDER (1) GRANTING PLAINTIFF'S MOTION TO AMEND (ECF NO. 13), (2) DENYING MOTIONS FOR APPOINTMENT OF COUNSEL (ECF NOS. 9, 12), AND (3) PARTIALLY DISMISSING CASE

Before the Court is Plaintiff Curtis L. Hampton's complaint filed pursuant to 42 U.S.C. § 1983. Hampton, proceeding *pro se*, is incarcerated at the Saginaw Correctional Facility in Freeland, Michigan. For the reasons discussed, the Court dismisses defendants Washington, Douglas, Anderson, Flaugher, Kusey, and Karnes. The Court also dismisses Hampton's claims asserted under the Fifth, Eighth, and Fourteenth Amendments, the Federal Tort Claims Act, and various federal criminal statutes. The Court declines to exercise supplemental jurisdiction over Hampton's state-law claims against the dismissed defendants.

## I.   STANDARD OF REVIEW

Hampton is proceeding without prepayment of the fees and costs in this action. Under the Prison Litigation Reform Act of 1996 ("PLRA"), the Court must screen the complaint before service and dismiss the complaint, or any portion of the complaint, if it determines the action is frivolous or malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief. *See* 42 U.S.C. § 1997e(c); 28 U.S.C. § 1915(e)(2)(B).

To state a claim under 42 U.S.C. § 1983, a civil rights plaintiff must plausibly allege: (1) the violation of a right secured by the Constitution or another law of the United States, and (2) by a person acting under color of state law. *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). A complaint "does not need detailed factual allegations," but the "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (footnote and citations omitted). In other words, "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'"

2

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

## II.  PLAINTIFF'S MOTIONS

On May 30, 2024, Hampton filed a motion for leave to file an amended complaint (ECF No. 13) and an amended complaint (ECF No. 14). Federal Rule of Civil Procedure 15(a)(1) allows a party to amend its pleading once as a matter of course. Because Hampton previously filed an amended complaint (ECF No. 11), he may only amend his complaint by the Court's leave, which should be freely given when justice so requires. Fed. R. Civ. P. 15(a)(2).

Under Rule 15(a)(2), a motion for leave to amend should only be denied if "there is 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.'" *Brown v. Chapman*, 814 F.3d 436, 442-443 (6th Cir. 2016) (quoting *Foman v.*

*Davis*, 371 U.S. 178, 182 (1962)). Hampton's motion to amend does not appear to be made in bad faith or to be an attempt to delay the proceedings, nor will it prejudice the opposing party. The Court **GRANTS** the motion.

When a plaintiff files an amended complaint, the new complaint supersedes all previous complaints and controls the case from that point forward. *Parry v. Mohawk Motors of Michigan, Inc.*, 236 F.3d 299, 306 (6th Cir. 2000) (citing *In re Atlas Van Lines, Inc.*, 209 F.3d 1064, 1067 (8th Cir. 2000)).

Hampton also has filed two motions for appointment of counsel. (ECF Nos. 9, 12.) Appointment of counsel in a civil case is not a constitutional right." *Lavado v. Keohane*, 992 F.2d 601, 605 (6th Cir. 1993); *Bennett v. Smith*, 110 F. App'x 633, 635 (6th Cir. 2004) ("[T]here is no right to counsel in prisoner civil rights cases."). Under 28 U.S.C. § 1915(e), "[t]he court may request an attorney to represent any person unable to afford counsel." § 1915(e)(1) (emphasis added). It is a matter "within the discretion of the court," *Childs v. Pellegrin*, 822 F.2d 1382, 1384 (6th Cir. 1987) (quotation omitted), and "is a privilege that is justified only by exceptional circumstances." *Lavado*, 992 F.2d at 606

(quotation omitted). This case does not present exceptional circumstances warranting appointment of counsel. The motions to appoint counsel are **DENIED**.

## III.   COMPLAINT

Hampton alleges that, during his incarceration at the Saginaw Correctional Facility, he ordered five books[1] from the Edward R. Hamilton Bookseller for a total cost of $ 220.21. Defendants M. Beauchamp and L. Cummings, mailroom staff, rejected three of the five books because they contained content that was impermissible under MDOC Policy Directive 05.03.118, including images of bondage and sex acts. On March 28, 2023, Hampton requested an administrative hearing on the rejection by mailroom staff.

An administrative hearing was held on August 4, 2023. Defendant Anderson presided over the hearing and held that the books were properly rejected. Anderson denied Hampton's requests to review the rejected books prior to and during the hearing. Anderson did not provide a copy of the hearing report in violation Michigan Department of

---

[1] The five books are: <u>Peep Show/Uncensored Beautifully Sexy</u>, <u>Dirty Girls Having Fun</u>, <u>Kinky Taboo Girls</u>, <u>Super Nylon Parade</u>, and <u>Tattooed Beauties.</u>

Corrections (MDOC) policy directive 05.03.118. On April 19, 2023, corrections officer M. Guerin gave Hampton a copy of the hearing report. Hampton noticed that only one of the rejected books, <u>More Dirty Girls Having Fun</u>, was specifically addressed in the report. Guerin contacted the mailroom staff and learned that one of the three rejected books, <u>Peep Show/Uncensored Beautifully Sexy</u>, was not in their possession. Guerin suggested that Hampton submit a property claims form for the missing book. Guerin responded to Hampton's Step I grievance concerning Anderson's failure to comply with MDOC policy for the administrative hearing. Guerin directed a rehearing because the hearings report did not adequately respond to the issues.

On May 24, 2023, Anderson attempted to conduct a rehearing, but it was discovered that Hampton's books had been destroyed by mailroom staff, defendants Beauchamp and Cummings. Hampton filed a grievance claiming that Beauchamp and Cummings failed to follow MDOC Policy Directive 05.03.118. The grievance responders, defendants Audrey Karnes and Glenn Kusey, determined that the facility was responsible for destruction of the books and advised Hampton to submit a property claim form to request payment.

Hampton sought payment for the lost book. Previously, he had been placed on modified access to the grievance system by grievance coordinator S. Flaugher. Nevertheless, Hampton received a property claim form from Flaugher. Hampton claims that Flaugher entered the incorrect date on the form in an attempt to prevent payment to Hampton. It appears that, with the assistance of the Office of Legislative Corrections Ombudsman, Hampton was reimbursed for one book.

Hampton also states that he attempted to return two of the rejected books to the publisher for a refund. He claims that one was never received by the publisher and that he was overcharged for postage because he was not permitted to use the "media rate."

## IV.  DISCUSSION

### A. Defendants Washington and Douglas

Hampton's claims against MDOC director Heidi Washington and warden Douglas are based upon their supervisory authority. The doctrine of respondeat superior does not apply in § 1983 lawsuits to impute liability onto supervisory personnel, *see Monell v. Dep't of Soc. Servs. Of the City of N.Y.*, 436 U.S. 658, 691-95 (1978), unless it is shown "that the supervisor encouraged the specific incident of misconduct or in some

other way directly participated in it." *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984). A supervisor's failure to supervise, train or control an employee is not actionable under § 1983, unless the plaintiff shows "the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct . . .". *Hays v. Jefferson County, Ky.*, 668 F.2d 869, 874 (6th Cir. 1982).

Hampton fails to allege that defendants Douglas and Washington engaged in any "active unconstitutional behavior" rather than a "'mere failure to act.'" *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (quoting *Salehpour v. Univ. of Tenn.*, 159 F.3d 199, 206 (6th Cir. 1998)). He, therefore, fails to state a claim against them.

## B. First Amendment

Retaliation based upon a prisoner's exercise of his constitutional rights violates the First Amendment. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999). A First Amendment retaliation claim has three elements: (1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there was a causal connection between elements one and two, *i.e.*, the

adverse action was motivated, at least in part, by the plaintiff's protected conduct. *Id.*

Hampton alleges that defendants S. Flaugher, Leslie Cummings, Marjorie Beauchamp, and Audrey Karnes retaliated against him for filing grievances regarding the withholding and destruction of his books. "An inmate has an undisputed First Amendment right to file grievances against prison officials on his own behalf." *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000). That right does not extend to the filing of frivolous grievances. *Hill v. Lappin*, 630 F.3d 468, 472 (6th Cir. 2010). At the screening stage, the Court finds that Hampton's grievances were not clearly frivolous.

To establish the second element of a retaliation claim, a plaintiff must show adverse action by a prison official sufficient to deter a person of ordinary firmness from exercising his constitutional rights. *Thaddeus-X*, 175 F.3d at 396. The adverseness inquiry is an objective one and does not depend on how a particular plaintiff reacted. The relevant question is whether the defendant's conduct is "capable of deterring a person of ordinary firmness;" the plaintiff need not show actual deterrence. *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002).

Hampton alleges that S. Flaugher retaliated against him by placing him on modified access to grievance procedures. *See Houston v. Sices*, No. 1:21-cv-947, 2022 WL 17070122, at *2 (W.D. Mich. Oct. 3, 2022), report and recommendation adopted, 2022 WL 17042453 (W.D. Mich. Nov. 17, 2022). "While on modified access, a prisoner may obtain Step I forms only through the Step I Grievance Coordinator.". *Id.* Placement on modified access does not constitute an adverse action for purposes of a retaliation claim unless the grievance process is rendered completely unavailable. *See, e.g., Alexander v. Vittitow*, No. 17-1075, 2017 WL 7050641, at *5 (6th Cir. Nov. 9, 2017); *Walker v. Mich. Dep't of Corr.*, 128 Fed. App'x 441, 446 (6th Cir. 2005). Hampton does not claim that the grievance process was completely unavailable to him. Therefore, he fails to state a retaliation claim against Flaugher.

Hampton also asserts a retaliation claim against Saginaw Correctional Facility accounting technician Audrey Karnes. He states, "Also look at 1st Amendment for retal[ia]tion and redress of grievances." (ECF No. 1 PageID.302.) Presumably, Hampton intends to assert that Karnes retaliated against him by charging an excessive postage rate. But he fails to allege that other prisoners would not have been charged the

10

same rate or that the amount charged for postage was motivated by Hampton's protected conduct. Conclusory allegations of a retaliatory motive unsupported by material facts are insufficient to state a retaliation claim. *Gutierrez v. Lynch*, 826 F.2d 1534, 1538-39 (6th Cir. 1987). Hampton's vague allegation of retaliation is insufficient to state a claim.

Hampton claims that defendants Beauchamp and Cummings retaliated against him for filing grievances by destroying his books. While the books may have been banned from the facility, Hampton claims that he could have obtained a refund from the publisher absent the alleged retaliatory actions. Hampton plausibly alleges that Beauchamp and Cummings subjected him to an adverse action. He also plausibly alleges a causal connection between his protected conduct and the alleged adverse actions. Hampton states sufficient allegations to proceed past this initial screening stage on his retaliation claims against these two defendants.

## C. Fifth Amendment Due Process Claim

Hampton asserts that Defendants violated his rights under the Fifth Amendment.  "[T]he Fifth Amendment's Due Process Clause

11

circumscribes only the actions of the federal government." *Scott v. Clay Cty., Tenn.*, 205 F.3d 867, 873 n.8 (6th Cir. 2000). Hampton raises his claims only against state actors so he may not maintain a Fifth Amendment claim.

### D. Federal Tort Claims Act

Hampton seeks relief under the Federal Tort Claims Act (FTCA). The FTCA provides that the "United States shall be liable ... in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674. A person may sue under the FTCA to recover damages from the United States for personal injuries sustained during confinement in a federal prison by reason of the negligence of a government employee. *United States v. Muniz*, 374 U.S. 150 (1963). The United States is the only proper defendant under the Federal Tort Claims Act. *Mars v. Hanberry,* 752 F.2d 254, 255 (6th Cir. 1985). As noted, Hampton sues only state actors; accordingly, he may not assert claims under the FTCA.

### E. Criminal Statutes

Hampton asserts claims based upon alleged violations of several federal criminal statutes: 18 U.S.C. §§ 241, 1001, 1016, 1017 & 1018.

Criminal statutes rarely create private causes of action. *See Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 190 (1994) ("We have been quite reluctant to infer a private right of action from a criminal prohibition alone."). Here, there is no statutory basis for inferring that a civil cause of action exists for violations of the criminal statutes that Hampton identifies. *See e.g.*, *Setzer v. First Choice Lending Servs., LLC*, No. 18-5192, 2018 WL 7500477, at *3 (6th Cir. Sept. 10, 2018) (citations omitted) (18 U.S.C. § 1001 does not provide a private cause of action); *United States v. Oguaju*, 76 F. App'x 579, 581 (6th Cir.2003) (18 U.S.C. § 241 does not provide for a private cause of action for conspiracy). Hampton cannot maintain a claim against Defendants for alleged violations of these criminal statutes.

### F. Fifth Amendment Takings Clause

Hampton's claim that the destruction or loss of his books violated the Fifth Amendment's Takings Clause fails to state a claim. The Takings Clause, which is applicable to the states through the Fourteenth Amendment, provides that "private property [shall not] be taken for public use, without just compensation." U.S. Const. Amend. V. *See Brown v. Legal Found. of Washington*, 538 U.S. 216, 231-32 (2003) ("While it

confirms the State's authority to confiscate private property, the text of the Fifth Amendment imposes two conditions on the exercise of such authority: the taking must be for a 'public use' and 'just compensation' must be paid to the owner."). Hampton has made no allegation that his books were taken for a public use. The Fifth Amendment takings claim will be dismissed.

### G. Equal Protection Clause

Hampton also fails to state a claim for relief under the Equal Protection Clause. Prisoners are entitled to equal protection under the law. *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). The linchpin of an equal protection claim is that the government has intentionally treated people who are similarly situated in a different manner based upon an improper factor such as race, gender, or age, or in the absence of a rational basis for the disparate treatment. *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). Plaintiff fails to explain in any way how he has been treated differently from others who are similarly situated. Further, prisoners are not members of a protected class for equal protection purposes. *Hampton v. Hobbs*, 106 F.3d 1281, 1286 (6th Cir. 1997). This claim will be dismissed.

## H. Postage Charge

Hampton's claim that he was overcharged for postage to return the books to the publisher fails to state a claim under § 1983. There is no constitutionally protected interest in a prisoner obtaining postage as inexpensively as possible. *McCall v. Keefe Supply Co.*, 71 F. App'x 779, 780 (10th Cir. 2003) (citation omitted) (holding that the inmate had no constitutionally protected interest in buying stamps as cheaply as possible); *Greenwell v. Fackler*, No. 3:10CV–P53–H, 2010 WL 935441, at *2 (W.D. Ky. March 11, 2010) (dismissing inmates claims of postage overcharges under 28 U.S.C. § 1915A).

## I. Eighth Amendment

Hampton alleges that the deprivation or destruction of his personal property amounted to cruel and unusual punishment under the Eighth Amendment. This allegation does not sufficiently give rise to an Eighth Amendment claim and will be dismissed. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994). *Rancourt Little Mountain Woodell v. Wetzel*, No. 20-3235, 2022 WL 17424287, at *3 (3d Cir. Dec. 6, 2022); *Neely v. Unknown Pederson*, No. 2:24-CV-18, 2024 WL 1340560, at *6 (W.D. Mich. Mar. 29,

2024) (loss of property did not rise to the level of cruel and unusual punishment that violates the Eighth Amendment).

**J. Due Process**

Hampton also claims that the defendants violated his right to due process by failing to follow MDOC policy. The elements of a procedural due process claim are (1) a life, liberty, or property interest requiring protection under the Due Process Clause, and (2) a deprivation of that interest (3) without adequate process. *Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006).

This claim is barred by the doctrine of *Parratt v. Taylor*, 451 U.S. 527 (1981), overruled in part on other grounds by *Daniels v. Williams*, 474 U.S. 327 (1986). Under *Parratt*, a person deprived of property by a "random and unauthorized act" of a state employee has no federal due process claim unless the state fails to afford an adequate post-deprivation remedy. If an adequate post-deprivation remedy exists, the deprivation, although real, is not "without due process of law." *Parratt*, 451 U.S. at 537. This rule applies to both negligent and intentional deprivation of property, as long as the deprivation was not done pursuant to an established state procedure. *See Hudson v. Palmer*, 468 U.S. 517, 530-36

16

(1984). Hampton's claim is premised upon the alleged failure to follow state policy, so he must plead and prove the inadequacy of state post-deprivation remedies. *See Copeland v. Machulis*, 57 F.3d 476, 479-80 (6th Cir. 1995).

The Sixth Circuit has held that Michigan provides adequate post-deprivation remedies for deprivation of property. *See id.* at 480. Hampton does not allege any reason why a state-court action would not afford him complete relief for the deprivation of his personal property. And numerous avenues are available to him. He may submit a claim for property loss to the State Administrative Board. Mich. Comp. Laws § 600.6419(1); MDOC Policy Directive 03.02.131 (effective March 27, 2017). Michigan law authorizes actions in the Court of Claims asserting tort or contract claims "against the state and any of its departments, commissions, boards, institutions, arms, or agencies." Mich. Comp. Laws § 600.6419(1)(a).

Because Hampton has not alleged that state court remedies are unavailable to redress the alleged deprivation of his property, he has failed to support his assertion that Defendants violated his due process rights. This claim will be dismissed.

Hampton's allegations also fail to show that he was otherwise denied the right to petition the government for redress, given that inmates have no constitutional right to an effective prison grievance procedure. *See Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003). The defendants' alleged failure to comply with the MDOC's policy directives does not rise to the level of a constitutional violation cognizable under § 1983. *See Laney v. Farley*, 501 F.3d 577, 580 & n.2 (6th Cir. 2007).

### K. State Law Claims

Hampton raises state-law claims against all defendants. In determining whether to retain supplemental jurisdiction over state-law claims, "[a] district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues." *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993). Generally, where a district court has exercised jurisdiction over a state-law claim solely by virtue of supplemental jurisdiction and the federal claims are dismissed prior to trial, "the balance of considerations usually will point to dismissing the state law claims." *Gamel v. City of Cincinnati*, 625 F.3d 949, 952 (6th Cir. 2010) (quotation omitted). Here, because the Court will

dismiss Plaintiff's federal claims against Defendants Washington, Douglas, Anderson, Flaugher, Kusey, and Karnes, the Court declines to exercise supplemental jurisdiction over the state-law claims against these defendants. The state law claims against these defendants will be dismissed without prejudice.

## V.   CONCLUSION

Hampton has failed to state a claim upon which relief may be granted with respect to claims asserted under the Fifth, Eighth, and Fourteenth Amendments, the Federal Tort Claims Act, and various federal criminal statutes. These claims are **DISMISSED**. Hampton's First Amendment retaliation claim against all defendants except Cummings and Beauchamp is **DISMISSED**.

The Court declines to exercise supplemental jurisdiction over Hampton's state-law claims as to defendants Washington, Douglas, Anderson, Flaugher, Kusey, and Karnes, and those claims are **DISMISSED WITHOUT PREJUDICE**.

Defendants Washington, Douglas, Anderson, Flaugher, Kusey, and Karnes are **DISMISSED** from this action because no claims remain against them.

Hampton's motion to amend (ECF No. 13) is **GRANTED**.

Hampton's motions for appointment of counsel (ECF Nos. 9, 12) are

**DENIED**.

**SO ORDERED**.

<u>**s/Jonathan J.C. Grey**</u>
Jonathan J.C. Grey
United States District Judge

Dated: February 13, 2025

## <u>Certificate of Service</u>

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First-Class U.S. mail addresses disclosed on the Notice of Electronic Filing on February 13, 2025.

<u>s/</u> **S. Osorio**
Sandra Osorio
Case Manager